UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MARTIN A. GIROUX,
                Plaintiff,

v.                                    Docket No. 2:19-cv-00187-cr

PAUL J. FOLEY, JR.,
                Defendant.

**DEFENDANT'S MOTION TO DISMISS**

      NOW COMES Defendant Paul J. Foley, Jr., by and through his attorneys, Langrock Sperry & Wool, LLP, and, pursuant to Fed. R. Civ. P. 12(b)(2), hereby moves this honorable Court to dismiss the Complaint filed by Plaintiff for lack of personal jurisdiction. In support of his Motion to Dismiss, Defendant submits the following Memorandum of Law.

Factual Background

      Defendant Paul Foley is an 84-year-old man, and a resident of the Wichita, Kansas metropolitan area since the age of 5. Plaintiff's family lived in the Wichita area as well when Plaintiff was growing up, and in the early 1980s, Defendant and Plaintiff's father became friends through their work at a local college. The parties' families socialized together in Kansas and occasionally vacationed together. During one such vacation to Vermont over one weekend thirty-five years ago, Plaintiff now alleges that Defendant sexually abused him, thereby violating 12 V.S.A. § 522(c).

      The parties' relationship was centered entirely in Kansas. Neither party lived in Vermont at the time of the alleged conduct; Defendant has never spent any significant time in Vermont, nor to his knowledge has the Plaintiff. Plaintiff does not allege that the parties were

1

ever in Vermont together other than the one weekend in 1984, or that Defendant was ever in the State again. At this juncture, Defendant is an ailing octogenarian who requires 24-hour assistance with his healthcare and activities of daily living. In addition, Defendant is not ambulatory, requiring an electronic mobility scooter to move independently. He still lives in Wichita; Plaintiff lives in New Jersey; and there are no known potential witnesses living in Vermont.

## Memorandum of Law

Defendant moves to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. Personal jurisdiction "concerns the authority of the court to hear and determine the controversy." *Local 538 United Bhd. of Carpenter and Joiners of Am. v. U.S. Fid. & Guar. Co.*, 154 F.3d 52, 55 (2d Cir. 1998). Plaintiff bears the burden of showing that the court has jurisdiction over Defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (*citing Robison v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). In the context of a Rule 12(b)(2) motion, "all well-pleaded facts are accepted as true." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 56 (2d Cir. 2012) (*citing Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)). However, the Court should not draw "argumentative inferences" in Plaintiff's favor, nor accept as true legal conclusions couched as fact. *Id*. at 59.

In resolving questions of personal jurisdiction in a diversity action, the district court must conduct a two-part inquiry—"[f]irst, the plaintiff must make a showing that the state long-arm statute reaches the defendant[]; and second, the Court's assertion of jurisdiction must comport with the requirements of the Due Process Clause." *Bechard v. Constanzo*, 810 F.Supp. 579, 582 (D. Vt. 1992) (*citing Braman v. Mary Hitchcock Hosp.*, 631 F.2d 6, 7 (2d

Cir. 1980)). Notably, Vermont's long-arm statute, 12 V.S.A. § 913(b), "permits state courts to exercise jurisdiction over nonresident defendants 'to the fullest extent permitted by the Due Process Clause' of the U.S. Constitution." *Fox v. Fox*, 2014 VT 100, ¶ 9 (*quoting N. Aircraft, Inc. v. Reed*, 154 Vt. 36, 40 (1990)). Accordingly, the statutory and constitutional analyses under Vermont's long-arm statute and the Due Process Clause, respectively, are one and the same. *Id*.

The Due Process test for personal jurisdiction has two components—the "minimum contacts" inquiry and the "reasonableness" inquiry. *Metro. Life*, 84 F.3d at 567. Initially, the Court must determine whether the defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction. *Id.* (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). With respect to the initial inquiry, courts distinguish between "specific" and "general" jurisdiction. *Id*. "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Id*. at 567–68 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & nn. 8–9 (1984)). General jurisdiction, on the other hand, "is only appropriate where a party's 'affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" *Cernansky v. Lefebvre*, 88 F.Supp.3d 299, 307 (D. Vt. 2015) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff's allegation that Defendant was in Vermont for one weekend, 35 years ago does not comprise "continuous and systematic" contacts that would support general jurisdiction. Accordingly, the Court's "minimum contacts" analysis here is limited to a specific jurisdiction inquiry.

In addition, "[w]hile the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life*, 84 F.3d at 568 (*quoting Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). However, both components of the Due Process inquiry are related insofar "as both originated in the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend 'traditional notions of fair play and substantial justice.'" *Metro. Life*, 84 F.3d at 568 (*citing Int'l Shoe*, 326 U.S. at 316 (discussing "fair play and substantial justice" in justifying minimum contacts stage of due process inquiry); *Burger King*, 471 U.S. at 476–77 (citing same passage to support "reasonableness" stage)). Consequently, in assessing whether it may exercise personal jurisdiction over a particular defendant, the Court must weigh the relative strengths and weaknesses of each requirement, *i.e.*, "depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Id*; *see also Ticketmaster– New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir.1994) ("We think ... that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.").

Here, with respect to the first inquiry, Plaintiff has alleged that Defendant purportedly sexually abused him during a brief visit to Vermont. Notably, Vermont's long-arm statute, 12

4

V.S.A. § 913(b),[1] unlike other States' counterparts,[2] does not expressly confer personal jurisdiction on individuals who commit tortious acts within the State, a tacit acknowledgement that in some instances, the exercise of personal jurisdiction is inappropriate even if the defendant was briefly present in Vermont. Defendant's *de minimis* alleged contacts with Vermont—a weekend in the Green Mountain State over 35 years ago—are insufficient for him to reasonably anticipate being haled into Court in Vermont. Accordingly, the "minimum contacts" requirement of the Due Process inquiry has not been met.

Whether or not the first inquiry was satisfied, the exercise of personal jurisdiction over Defendant in this case is patently unreasonable. The second part of the Due Process inquiry "asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Id.* (*citing Int'l Shoe*, 326 U.S. at 316). As part of the "reasonableness" analysis, the U.S. Supreme Court has directed lower courts to evaluate the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant;
> (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

---

[1] 12 V.S.A. § 913(b) provides: "Upon the service, and if it appears that the contact with the State by the party or the activity in the State by the party or the contact or activity imputable to him or her is sufficient to support a personal judgment against him or her, the same proceedings may be had for a personal judgment against him or her as if the process or pleading had been served on him or her in the State."

[2] Connecticut's long-arm statute, C.G.S.A. § 52-59b(a)(2), provides, in pertinent part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: … (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." Similarly, New York's long-arm statute, N.Y.C.P.L.R. § 302(a)(2), provides: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: … commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act…"

*Id*. (*citing Asahi Metal Indus. Co. v. Superior Court*, 280 U.S. 102, 113–14 (1987)).

Here, the burden on Defendant—a long-time resident of the greater Wichita metropolitan area—is substantial. As an ailing, non-ambulatory octogenarian, Defendant will find long distance travel to Vermont extremely difficult. His travel difficulties are compounded by his need for 24-hour assistance with his healthcare and activities of daily living, rendering litigation in Vermont highly burdensome, expensive, and potentially detrimental to his health. While any defendant would suffer a significant personal and financial burden litigating a case over 1,500 miles from his home, that burden is especially acute in this case as a result of Mr. Foley's physical limitations. *Contra Glinka v. Abraham & Rose Co., Ltd.*, 199 B.R. 484, 487 (D. Vt. 1996) (explaining that burden on defendant to defend in Vermont was slight, because its offices were in Montreal). Moreover, it is unlikely that there are any potential witnesses in Vermont with information about the litigation. *See Metro. Life*, 84 F.3d at 573–74 (first factor weighs in out-of-state defendant's favor when no witnesses or evidence located in Vermont).

With regards to the second factor, Vermont has a limited interest in regulating the conduct between two out-of-state residents whose relationship centered in Kansas, particularly when the purported conduct is over 35 years old. As neither of the parties is a Vermont resident, the forum state's interest in providing redress to its own citizens is entirely absent. *Id*. at 574; *Bechard*, 810 F.Supp. at 586.

Turning to the third factor, Plaintiff's interest in convenient and effective relief is hindered by litigating the matter in Vermont—no known witnesses are located in the Green Mountain State. Moreover, Plaintiff himself is not a resident of Vermont. *Metro. Life*, 84 F.3d at 574 (third factor carries less weight when plaintiff not resident of forum state). It appears

that his only interest in litigating in Vermont "stems from [his] belief that the forum offers a more generous statute of limitations;" in fact, it may be the only forum in which Plaintiff's claim is not barred. *Id*. However, such a consideration is irrelevant and impermissible in the context of a jurisdictional inquiry. *Id*. (quoting *Keeton*, 465 U.S. at 778) ("'The question of the applicability of [the forum state's] statute of limitations ... presents itself in the course of litigation only after jurisdiction over respondent is established, and we do not think that such choice of law concerns should complicate or distort the jurisdictional inquiry.'").

When evaluating the fourth factor, "courts generally consider where witnesses and evidence are likely to be located." *Id*. As aforementioned, Plaintiff is a resident of New Jersey and Defendant is a resident of Kansas. As the parties' entire relationship was based in Kansas, the vast majority, if not all, of the witnesses and evidence are likely to be located there—or at least outside of Vermont—thus this factor strongly favors Defendant. *Id*. at 575.

Finally, with respect to the fifth factor, there is no shared interest of the states in furthering substantive social policies. While Vermont may have an interest in providing recourse for torts purportedly committed within its borders, other interested states—Kansas, for example—have a substantial interest in freeing their citizens from litigating stale claims and in giving individuals repose for ancient breaches of law. Consequently, there is not a shared interest in furthering a given substantive social policy in the present matter.

The unreasonableness of pursuing Defendant in Vermont is exacerbated by the extremely limited contacts asserted by the Plaintiff. Because Plaintiff asserts only *de minimis* contact by Defendant with Vermont, the Court should give particular weight to the unreasonableness of requiring Defendant to litigate here. *See Ticketmaster–New York, Inc.*, 26

F.3d at 210 ("the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.")

In sum, because Defendant's contacts with Vermont are *de minimis*, the reasonableness factors should carry greater weight in the Court's Due Process inquiry. *Metro. Life*, 84 F.3d at 568. Those factors evince the unreasonableness of this Court exercising personal jurisdiction over Defendant. Put differently, Plaintiff's interest in pursuing his action in Vermont and Vermont's interest in adjudicating the matter are so attenuated that the assertion of personal jurisdiction does not comport with traditional notions of fair play and justice. Exercising jurisdiction over the Defendant on these facts is unreasonable and thus violates Defendant's Due Process rights. Accordingly, Plaintiff's Complaint should be dismissed for lack of personal jurisdiction over Defendant.

WHEREFORE it is respectfully requested that this honorable Court DISMISS the instant case, and grant such other relief as the Court deems just and necessary.

DATED at Burlington, Vermont this 14th day of November, 2019.

LANGROCK SPERRY & WOOL, LLP

_____
Lisa B. Shelkrot
PO Box 721, 210 College Street
Burlington, VT 05402
lshelkrot@langrock.com
Phone:  (802) 864-0217

Attorneys for Defendant  Paul J. Foley, Jr.

996951.1

8